BENJAMIN STRIBLING, Appellant, *v.* CASSANDRA ROSS, Appellee.

APPEAL FROM CASS.

Where A, being a *bona fide* purchaser, having an unrecorded conveyance of land, which had been levied upon by attachments ripened into judgments as the property of other parties, the conveyance of which in former grantees was fraudulent, and a bill was filed to set aside such conveyances in favor of the judgment creditors in attachment, it was held that A, never having reduced the land into possession, nor recorded his title prior to the filing of the bill to set aside the conveyances, his wife was not dowable of such land.

A widow is not dowable of land, unless her husband was, during marriage, seized of an estate of inheritance therein.

The right to dower is liable to be defeated by every subsisting claim or incumbrance existing prior to the husband's title, and which would have defeated his seizin.

THIS cause was heard by WALKER, Judge, at the November term, 1853, of the Cass Circuit Court.

D. A. SMITH, for Appellant.

M. McCONNEL, for Appellee.

TREAT, C. J. Cassandra Ross filed her petition against Benjamin Stribling, claiming dower in ninety acres of land in Cass county. The case was submitted to the court on the following state of facts:

The petitioner was married to J. M. Ross on the 8th of January, 1840, and he died in August, 1846. In March, 1838, Babb conveyed the land in question to H. P. Ross, and the deed was recorded during the same month. In June, 1838, H. P. Ross conveyed the land to Butterworth, and the deed was recorded in that month. In June, 1839, Butterworth re-conveyed

a moiety of the land to H. P. Ross, and the deed was recorded the same day. On the 11th of January, 1840, Butterworth re-conveyed the other moiety to H. P. Ross, and the deed was recorded on the 8th of February following. On the 14th of January, 1840, H. P. Ross conveyed the land to J. M. Ross, and the deed was recorded on the 30th of May following.

In August, 1838, Titcomb levied an attachment on the land as the property of Babb; and in October following, Wilkinson levied another attachment thereon as the property of Babb. Judgments were rendered against Babb in these cases in 1839, and special executions were issued but not executed. In May, 1839, Childs recovered a judgment against Babb in the Cass circuit court.

On the 28th of January, 1840, Titcomb, Wilkinson and Childs exhibited a bill in chancery, in the Cass circuit court, against Babb, H. P. Ross and Butterworth, to set aside the deeds from Babb to H. P. Ross, H. P. Ross to Butterworth, and Butterworth to H. P. Ross, as fraudulent, and subject the land to the satisfaction of their judgments. Process was served upon the defendants prior to the first of May, 1840 ; and the relief asked for in the bill was decreed. The land was sold under the decree, and purchased by the complainants. The same was conveyed by them to Rew, by Rew to Miller, and by Miller to Stribling.

J. M. Ross was a *bona fide* purchaser of the land, and was for some time in possession thereof, but when, it did not appear. In 1845, Rew had the possession, and J. M. Ross brought an action of ejectment against him. Judgment was rendered therein in favor of Rew, and that judgment is still in full force.

The court decreed that the petitioner was entitled to dower in the land, and appointed commissioners to allot the same. Stribling prosecuted an appeal.

The judgment creditors acquired liens on the land as against Babb, H. P. Ross and Butterworth. The deeds between these parties being fraudulent, the land in their hands was bound by the judgments. The fraudulent grantees occupied no better position than the judgment debtor. As to them, the judgment creditors could sell the land on execution as the property of Babb ; or, they might have the deeds set aside in chancery, and then sell the land to satisfy their judgments. The question is, did J. M. Ross acquire any title as against the judgment creditors ? As he had no notice that the deeds were fraudulent, it may be that he would have acquired a good title to the land, if he had put his deed on record before the proceedings in chancery were instituted by the judgment creditors. But failing in this respect, he was concluded by those proceedings from

asserting title against the judgment creditors and those claiming under them. The statute provides, that " All deeds, mortgages and other instruments of writing which are required to be recorded, shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers, without notice ; and all such deeds and title papers shall be adjudged void as to all such creditors and subsequent purchasers, without notice, until the same shall be filed for record." Titcomb, Wilkinson and Childs were creditors within the true intent and meaning of this statute. See *Martin* v. *Dryden*, 1 Gilm. 187 ; and the matter of the estate of Jones, *ante*, 117. They had recovered judgments against the fraudulent grantor, and the judgments were liens on the land in the hands of the fraudulent grantees. Before the deed from those grantees to J. M. Ross was recorded, they filed a bill in chancery to set aside the fraudulent conveyances, and subject the land to sale for the payment of their judgments. The sole object of the suit was to obtain satisfaction of the judgments out of this particular land. They made all persons parties to the proceeding, who appeared, by the records, to have any interest in the land. It did not appear from the records, that J. M. Ross had any claim to the land ; and the proof fails to show that he took possession under his deed. The judgment creditors were, therefore, not chargeable with notice of his claim. They had a right to conclude from the circumstances of the case, and to act upon the conclusion, that the land had not been aliened by the fraudulent grantees. By the institution of the suit in equity, the judgment creditors secured a lien on the land, as against the grantee in the prior unregistered deed. As that lien was perfected and enforced by the sale and conveyance of the land to the judgment creditors, they and those claiming under them, acquired a good title thereto. It follows, that the petitioner is not entitled to dower in the land. A widow is not dowable of land, unless her husband was, during marriage, seized of an estate of inheritance therein. 4 Kent's Com. 37 ; *Sparrow* v. *Kingman*, 1 Comstock, 242. The right to dower is liable to be defeated by every subsisting claim or incumbrance, existing prior to the inception of the husband's title, and which would have defeated his seizin. 4 Kent's Com. 50 ; *Greene* v. *Greene*, 1 Hammond, 535. In this case, the husband was never seized of the land as against the judgment creditors. They acquired a specific lien thereon before his deed took effect ; and that lien having been perfected by a sale and conveyance of the land, the seizin of the husband was effectually defeated, and consequently, the widow acquired no right to dower.

The decree must be reversed and the suit dismissed.

*Judgment reversed.*